# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

CHARLES A. GOSA                                                                           PLAINTIFF

V.                              NO. 3:14CV00016 JTR

CAROLYN W. COLVIN,
Acting Commissioner,
Social Security Administration                                                            DEFENDANT

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff, Charles A. Gosa, appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have filed Appeal Briefs (*docs. 11 and 14*), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108, F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable

mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On July 29, 2010, Plaintiff filed applications for SSI and DIB, alleging disability since June 4, 2010. *Tr. 54*. In his Disability Report – Adult, he stated that he was disabled because of seizures and dyslexia. *Tr. 152*. After his claims were denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge ("ALJ").

On July 30, 2012, the ALJ conducted an administrative hearing, where Plaintiff and a vocational expert ("VE") testified. *Tr. 243-260*. At the time of the hearing, Plaintiff was 28-years old and had completed the ninth grade. *Tr. 246*. He had past relevant work performing masonry. *Tr. 256*.

In his September 21, 2012 decision, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since his alleged onset date; (2) had "severe" impairments consisting of seizure disorder and borderline intellectual functioning; (3) did not have an impairment or combination of impairments

meeting a Listing; (4) had the RFC to perform unskilled work at all exertional levels, with seizure precautions; (5) could not return to his past relevant work; but (6) could perform other work existing in significant numbers in the national economy, with examples being jobs as a hospital cleaner, "cashier II," and housekeeper.[1] *Tr. 12-24*. Thus, the ALJ concluded that Plaintiff was not disabled.

On December 11, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. *Tr. 5*. Plaintiff then filed his Complaint appealing that decision to this Court.

In Plaintiff's Appeal Brief, he argues that the ALJ erred in his Listing analysis. For the reasons discussed below, the Court concludes that Plaintiff's argument has merit.

## II. Discussion

Plaintiff argues that the ALJ erred evaluating Listing 12.05C for mental retardation. Listing 12.05C consists of three essential elements: (1) a valid verbal, performance, or full scale IQ of 60-70; (2) an additional "severe" impairment; and (3) "evidence supporting the onset of intellectual and adaptive functioning disability before age twenty-two." *Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014).

---

[1] The available cashier job identified by the ALJ in his Step 5 analysis was actually excluded by the VE, due to its math and language requirements, because the ALJ's hypothetical assumed a claimant with a "marginal" education. *Tr. 258*. Nonetheless, the ALJs error on this point is not relevant to the issues raised in this appeal.

Plaintiff relies on a September 13, 2010 consultative psychological report from Dr. Daniel Gilchrist, a psychologist.[2] *Tr. 181-185*. On the WAIS-III scale, Plaintiff scored a verbal IQ of 71, a performance IQ of 75, and a full scale IQ of 70. Dr. Gilchrist concluded that: "[Plaintiff's] [r]esults are consistent with a diagnosis of Mental Retardation. Although [Plaintiff's] intelligence standard scores were within the Borderline range, his adaptive functioning skills are limited enough to warrant a diagnosis of Mental Retardation." *Tr. 185*.

On its face, Plaintiff's full scale IQ of 70 satisfied the first element of Listing 12.05C.[3] However, the ALJ discounted that score as being inconsistent with the remainder of the record, and found that Plaintiff had no significant deficits in adaptive functioning before the age of 22. *Tr. 15*. In doing so, the ALJ cited the following evidence: (1) Plaintiff, who was in resource classes in school, dropped out after the 9th grade due to a substance-abuse problem rather than "any alleged cognitive deficits;" (2) Plaintiff worked in construction prior to the age of 22; (3) "after the age of 22, [Plaintiff] earned income doing masonry work, where his duties included using machines and tools, applying technical knowledge, and supervising and/or training up to two employees;" (4) Plaintiff's daily activities,

---

[2] Dr. Gilchrist co-signed the report with Amy Flaherty, a "Licensed Psychological Examiner." *Tr. 185*. The report indicates that Ms. Flaherty was the "examiner." *Tr. 183*.

[3] Pursuant to the Listing, the lowest of multiple IQ scores is considered. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.")

"including housework, yard work, automotive repair, meal preparation, and occasional care for a his girlfriend's child;" and (5) internal inconsistencies in Dr. Gilchrist's report. *Tr. 15-16*. The ALJ concluded that Plaintiff was "within the range of borderline intellectual functioning and not that of mental retardation." *Tr. 15*.

The Eighth Circuit has held that an ALJ "may reject IQ scores that are inconsistent with a claimant's daily activities and behavior, especially when the scores are based on a one time examination by a nontreating psychologist." *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005). Nonetheless, an ALJ should not substitute his own medical opinion for those of medical specialists. *See Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008).

The Court notes that a state agency psychiatrist, Dr. Jay Rankin, reviewed the medical records in this case and completed a Psychiatric Review Technique form. Dr. Rankin checked boxes on the form indicating that Plaintiff had a *valid* IQ score between 60-70, and that he had deficits in adaptive functioning that manifested before the age 22. *Tr. 192*. Dr. Rankin found that Plaintiff did not satisfy Listing 12.05C because "[t]here does not appear to be [a] second significant impairment at this time."[4] *Tr. 205*. This assessment was affirmed by a state agency reviewing psychologist, Christal Janssen. *Tr. 208*. Thus, the state agency medical

---

[4] It appears that, at the time the state agency medical experts reviewed the case, Plaintiff had not submitted all of his medical records regarding his "seizure disorder." By the time of the administrative hearing, Plaintiff had submitted additional medical records for the ALJ's consideration. *Tr. 22; 212-242*.

specialists *corroborated* the validity of Plaintiff's IQ scores and deficits in adaptive functioning. The ALJ did not consider or discuss this fact in his Listing analysis.

Additionally, the ALJ did not adequately develop Plaintiff's educational and work history in considering his adaptive functioning:

> The record shows no significant deficits in the claimant's adaptive functioning before the age of 22. Prior to dropping out of school in the ninth grade, the claimant repeated Kindergarten and attended resource classes since the fourth grade. However, the claimant reported his decision to leave school was due to a substance-abuse problem and not associated with any alleged cognitive deficits. [Internal citation omitted]. Moreover, the record shows that the claimant worked in construction prior to the age of 22. Furthermore, after the age of 22, the claimant also earned income doing masonry work, where his duties included using machines and tools, applying technical knowledge, and supervising and/or training of up to two employees. [Internal citations omitted]. Additionally, the claimant can perform activities of daily living, including housework, yard work, automotive repair, and meal preparation. [Internal citation omitted]. The claimant also occasionally cares for his girlfriend's child.

*Tr. 15.*

First, the fact that Plaintiff left school in the ninth grade due to a "substance abuse disorder" does not negate the onset of deficits in adaptive functioning prior to age 22. The Eighth Circuit has "decided an IQ at an earlier age can be inferred [from a later IQ score]" because "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *See Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014). In the same vein, Plaintiff's "work in construction" prior to age 22 does not negate disability

6

under Listing 12.05C. Importantly, Listing 12.05C contemplates that a mildly retarded individual can perform some work — the crux of the Listing is whether there is a mental impairment *in addition to* another impairment. *See Maresh v. Barnhart*, 438 F.3d 897, 901 (8th Cir. 2006) ("the issue is not whether the claimant can perform gainful activity; rather, it is whether he has an impairment, other than his conceded mental impairment, which provides [a] significant work-related limited function") (internal alterations omitted); *see also Linaburg v. Commissioner*, 2014 WL 3101449, *9 (N.D. W. Va. July 7, 2014) ("Listing 12.05C assumes the ability to work at unskilled jobs."); *Muntzert v. Astrue*, 502 F. Supp.2d 1148 (D. Kan. 2007) ("DSM–IV and Listing 12.05(C) assume many, if not most, mildly mentally retarded individuals will be able to work. However, they recognize that some mildly mentally retarded individuals may be unable to work where they have a physical or other mental impairment imposing an additional and significant work-related limitation of function.") (internal citations and quotations omitted).

Finally, the ALJ emphasized Plaintiff's reported "masonry work, where his duties included using machines and tools, applying technical knowledge, and supervising and/or training of up to two employees." This is a reference to a "Work History Report" form, where Plaintiff checked boxes answering questions about his past "labor" jobs, including whether the jobs "used machines, tools, or

equipment," and "used technical knowledge or skills." *Tr. 105-107*. Plaintiff also checked a box indicating that he "supervised other people in this job," and wrote in that he "only trained others." *Id.* At the administrative hearing, the only testimony that the ALJ elicited from Plaintiff about his masonry work was that he "ma[de] mud and stuff like that, stacking bricks," and that he did not lay bricks but merely "br[ought] the work to them [the brick layers]." *Tr. 248*. In light of the hearing testimony, the ALJ should have developed the record further regarding Plaintiff's past work before concluding that Plaintiff's check-list answers on a form were inconsistent with deficits in adaptive functioning under Listing 12.05C.

For the foregoing reasons, the Court concludes that the ALJ's Listing analysis is not supported by substantial evidence. On remand, the ALJ should fully develop the record with respect to whether Plaintiff has deficits in adaptive functioning, consider all of the medical evidence, and ensure that he applies the correct legal standard in evaluating the criteria of Listing 12.05C.

### III. Conclusion

IT IS THEREFORE ORDERED THAT the Commissioner's decision is reversed and this matter is remanded to the Commissioner for further proceedings pursuant to "sentence four," within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 23rd day of January, 2015.

```
_____
UNITED STATES MAGISTRATE JUDGE
```